**[Cite as *State v. Smith*, 2021-Ohio-4234.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                          Court of Appeals No. OT-21-008

     Appellee                                      Trial Court No.  20 CR 081

v.

 Stephen P. Smith                               **<u>DECISION AND JUDGMENT</u>**

     Appellant                                    Decided:   December 3, 2021

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Thomas A. Matusak, Assistant Prosecuting Attorney, for appellee.

April F. Campbell, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} Appellant, Stephen Smith, appeals the judgment of the Ottawa County Court

of Common Pleas, sentencing him to 15 years in prison after he pled guilty to 100 counts

of pandering sexually oriented matter involving a minor. Because we find that the trial court did not err in sentencing appellant in this case, we affirm.

## A. Facts and Procedural Background

{¶ 2} On May 21, 2020, appellant was indicted on one hundred counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(5) and (C), felonies of the fourth degree. The charges were based upon sexually explicit material involving minors that was retrieved from appellant's laptop computer and thumb drive pursuant to a search warrant that was conducted on September 12, 2019.

{¶ 3} At his arraignment on May 29, 2020, appellant entered a plea of not guilty to the aforementioned charges, and the matter proceeded through pretrial discovery. Approximately four months later, on October 2, 2020, appellant appeared before the trial court for a plea hearing and indicated his desire to plead guilty to the charges contained in the indictment. Following a thorough Crim.R. 11 colloquy, the state articulated the following facts to support the charges to which appellant pled guilty:

> Police executed both search warrants on September 12th of last year.
> The Defendant was at his home on Zeemon Street and he agreed to speak
> with Detective Sergeant Gloor in a non-custodial setting at which time he
> provided a non-custodial confession that he had been downloading child
> pornography.
>
> Ultimately, the police seized the defendant's laptop and other
> electronics, and transferred possession to David Morford of the Toledo

2.

Police Department, who analyzed them pursuant to a validly-issued search warrant. When he did so, he discovered 413 videos and 5,089 images of minors engaged in sex acts on the Defendant's computer device.

The one hundred charges had been detailed by Detective Sergeant Amy Gloor in a bill of particulars, which I have marked as State's Exhibit 1, and which the State previously produced to Mr. Joslyn which forms the factual basis for each of the one hundred counts.

{¶ 4} Thereafter, appellant's trial counsel stipulated to the facts articulated by the state and the trial court accepted appellant's plea. After finding appellant guilty of all the charges contained in the indictment, the trial court continued the matter for sentencing and ordered a presentence investigation report. Thereafter, the parties filed their sentencing memoranda.

{¶ 5} In his sentencing memorandum, appellant applied the seriousness and recidivism factors under R.C. 2929.12 to the facts of this case and suggested that a community control sentence was the minimum sanction that could be imposed in order to accomplish the principles and purposes of sentencing under R.C. 2929.11. In support of his conclusion that community control was appropriate in this case, appellant emphasized his cooperation with law enforcement and the fact that he took full responsibility for his actions. Appellant, relying upon letters written on his behalf and attached to his memorandum, also indicated that he is a "dutiful worker" with no criminal history.

{¶ 6} For its part, the state submitted a sentencing memorandum in which it advocated for a prison sentence. The state opined that "this case involves the rapes and sexual tortures of numerous children that were filmed and then disseminated – for profit – to people like the Defendant, whose prurient interests are legally, socially, and morally reprehensible." The state went on to examine the seriousness and recidivism factors it deemed applicable under R.C. 2929.12 and urged the trial court to impose "a significant aggregate prison sentence" in order to serve society's compelling interest in eradicating child pornography and punishing those who collect it. The state argued that consecutive sentences were appropriate in this case because appellant's offenses involved a course of conduct and the harm caused by the offenses was so great or unusual that no single prison term for any of the offenses would adequately reflect the seriousness of appellant's conduct.

{¶ 7} Appellant's sentencing hearing was held on February 23, 2021.[1] At the outset of the hearing, the trial court noted its consideration of the presentence investigation report prepared in this case, as well as the sentencing memoranda that were submitted to the court by both parties. The trial court then heard statements in mitigation from appellant's trial counsel.

---

[1] On December 14, 2020, the original trial judge assigned to this case notified the parties of a conflict of interest and recused himself. A visiting judge was subsequently assigned to the case and was the trial judge who conducted the sentencing proceedings.

4.

**{¶ 8}** While addressing the court, appellant's trial counsel reiterated the request for a community control sentence and explained that appellant was laden with guilt over the offenses he committed. Trial counsel further expressed his shock at the lengthy prison sentence recommended by the state, which he claimed was far in excess of any sentence he had seen in his years of practice and was based upon the state "wildly overstating [appellant's] conduct." Counsel distinguished this case, which he characterized as a "possession case," from those cases involving the creation and production of child pornography, which he deemed to be more serious. As such, counsel urged that community control was the appropriate sanction in light of appellant's first-time offender status.

**{¶ 9}** Following trial counsel's statement in mitigation, the state addressed the court and expressed disagreement with trial counsel's minimization of the seriousness of appellant's possession of child pornography. In particular, the state argued that child pornography cases like this case involve depictions of "child rapes and they are videotaped and those videos are sold to people to get sexual gratification watching people get abused." Ultimately, the state maintained its prison sentence recommendation set forth in its sentencing memorandum.

**{¶ 10}** Appellant also addressed the court in mitigation. He informed the court that he cooperated with authorities in this case because he "felt so poorly" and "was going through bad anxiety." Appellant indicated that he was regretful and remorseful for

his actions and noted that he had undergone therapy for several months while awaiting trial.

{¶ 11} After hearing the foregoing statements from appellant's trial counsel, the state, and appellant, the trial court proceeded to sentence appellant. In so doing, the trial court acknowledged the overriding principles and purposes of felony sentencing under R.C. 2929.11, as well as the seriousness and recidivism factors under R.C. 2929.12. Upon considering the applicable factors, the trial court determined that a prison term was consistent with the principles and purposes of sentencing. Consequently, the court imposed 18-month prison sentences on each count of pandering sexually oriented matter involving a minor.

{¶ 12} The court further found, both at sentencing and in its sentencing entry, that consecutive sentences were (1) necessary to protect the public from future crime and to punish appellant, (2) not disproportionate to the seriousness of appellant's conduct and the danger he poses to the public, and that (3) at least two of the offenses were committed as part of one or more courses of conduct and the harm caused by the multiple offenses committed by appellant was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of appellant's conduct.

{¶ 13} Based upon its findings, the trial court grouped the 100 offenses to which appellant pled guilty into ten groups of ten counts. The court then ordered the following:

6.

* * * Counts #1 through #10 shall be served concurrently with each other, Counts #11 through #20 shall be served concurrently with each other, Counts #21 through #30 shall be served concurrently with each other, Counts #31 through #40 shall be served concurrently with each other, Counts #41 through #50 shall be served concurrently with each other, Counts #51 through #60 shall be served concurrently with each other, Counts #61 through #70 shall be served concurrently with each other, Counts #71 through #80 shall be served concurrently with each other, Counts #81 through #90 shall be served concurrently with each other, and Counts #91 through #100 shall be served concurrently with each other. The sentences in Counts 1-10, 11-20, 21-30, 31-40, 41-50, 51-60, 61-70, 71-80, 81-90, and 91-100 shall be served consecutively to each other, for a total period of incarceration of fifteen (15) years.

{¶ 14} Three weeks after he was sentenced, on March 15, 2021, appellant filed his timely notice of appeal.

## B. Assignments of Error

{¶ 15} On appeal, appellant assigns the following errors for our review:

I. The trial court's decision to impose consecutive sentences in Smith's case should be vacated.

7.

II. There is clear and convincing evidence that the record does not support the trial court's imposition of the maximum sentences, and Smith's sentences are also contrary to law.

## II. Analysis

### A. Consecutive Sentences

{¶ 16} In his first assignment of error, appellant contends that the trial court's decision to impose consecutive sentences in this case was erroneous and should be vacated.

{¶ 17} We review felony sentences under R.C. 2953.08(G)(2). *State v. Goings*, 6th Dist. Lucas No. L-13-1103, 2014-Ohio-2322, ¶ 20. We may increase, modify, or vacate and remand a trial court's imposition of consecutive sentences only if we clearly and convincingly find that: (1) "the record does not support the sentencing court's findings under division * * * (C)(4) of section 2929.14, * * *" or (2) "the sentence is otherwise contrary to law." *Id.*, citing R.C. 2953.08(G)(2). Clear and convincing evidence is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Mitten*, 6th Dist. Sandusky No. S-19-056, 2021-Ohio-89, ¶ 4, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 18}** Under R.C. 2929.14(C)(4), a trial court must make certain findings to impose consecutive sentences. Specifically, R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

9.

{¶ 19} The above-quoted language establishes that "the trial court must make three statutory findings before imposing consecutive sentences." *State v. Kiefer*, 6th Dist. Ottawa No. OT-21-005, 2021-Ohio-3059, ¶ 10, citing *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252 and *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26. First, the trial court must find that consecutive sentences are necessary to protect the public or to punish the offender. Second, the trial court must find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public. Third, the trial court must find that R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. In making the required findings, the trial court is not required to recite the language of the statute verbatim. *Bonnell* at ¶ 29. So long as a reviewing court "can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

{¶ 20} The trial court made each of the three required findings under R.C. 2929.14(C)(4) at the sentencing hearing and in its sentencing entry. Concerning the third finding, the trial court determined that at least two of the offenses were committed as part of one or more courses of conduct and the harm caused by the multiple offenses committed by appellant was so great or unusual that no single prison term for any of the offenses committed as part of the courses of conduct adequately reflects the seriousness of appellant's conduct.

10.

{¶ 21} In his brief before this court, appellant does not assert that the trial court failed to make the requisite findings to support the imposition of consecutive sentences. Rather, he argues that the trial court's finding of great or unusual harm under R.C. 2929.14(C)(4)(b) was not supported by the record. Appellant's argument is two-fold.

{¶ 22} First, appellant takes issue with the notion that his conduct caused any physical harm to the children who were depicted in the child pornography he possessed. Appellant cites the Seventh District's decision in *State v. Stout*, 2014-Ohio-1094, 6 N.E.3d 1263, in support of his statement that "courts have considered whether the type of pandering [he] was convicted of constitutes physical harm before and have concluded that it does not."

{¶ 23} Notably, the physical harm analysis contained in *Stout* had nothing to do with the imposition of consecutive sentences under R.C. 2929.14(C)(4). Instead, the analysis was related to whether a prison sentence could be imposed for a felony of the fourth degree under a prior version of R.C. 2929.13(B)(1)(b), which required physical harm in order to overcome the presumption of community control for felonies of the fourth degree. *Id.* at ¶ 26. Such physical harm is not required in order to impose consecutive sentences under R.C. 2929.14(C)(4).[2] Therefore, the holding in *Stout* is

---

[2] Moreover, the current version of R.C. 2929.13(B)(1)(b) grants trial courts discretion to impose a prison sentence for fourth or fifth degree felony sex offenses that are violations of Chapter 2907 of the Ohio Revised Code, precisely the type of offenses to which appellant pled guilty in this case.

11.

irrelevant to the issue raised by appellant in this case, namely whether the record supported the trial court's findings under R.C. 2929.14(C)(4).

{¶ 24} Second, appellant argues that the harm caused by his conduct was not great or unusual, because his mere possession of child pornography "is the typical conduct of the offense to which he pleaded guilty. * * * He was not involved in the making of it, did not distribute it to others, nor was he physically present during the making of it."

{¶ 25} Appellant's focus upon the distinction between possession of child pornography and the production and distribution of child pornography as a basis for minimizing the harm caused by his conduct is misplaced. First, we note that this distinction is already factored into appellant's sentence under the Revised Code section to which he pled guilty. Indeed, under R.C. 2907.322(C), possession offenses in violation of R.C. 2907.322(A)(5) are classified as felonies of the fourth degree, whereas production and distribution offenses in violation of R.C. 2907.322(A)(1), (2), and (3) are felonies of the second degree. Therefore, appellant already received the benefit of the distinction between possession and production of child pornography by virtue of his pleading guilty to felonies of the fourth degree instead of felonies of the second degree.

{¶ 26} Moreover, we reject appellant's insinuation that possession of child pornography is not particularly harmful to the children depicted therein. "Both the Supreme Courts of the United States and Ohio have unequivocally found that children are seriously harmed by the mere possession of pornography in which they are depicted." *State v. Maynard*, 132 Ohio App.3d 820, 827, 726 N.E.2d 574 (9th Dist.1999), citing

12.

*State v. Meadows*, 28 Ohio St.3d 43, 503 N.E.2d 697 (1986); *see also State v. McCartney*, 12th Dist. Clinton No. CA2003-09-023, 2004-Ohio-4781, ¶ 47 (finding that the McCartney "caused serious harm to several persons by possessing graphic images of those minors depicted in sexual activity").

{¶ 27} In a case involving multiple counts of pandering sexually oriented matter involving a minor, the Eighth District reiterated the United States Supreme Court's summary of the extent of the damage done to children who are victimized by child pornography, stating:

> In *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the U.S. Supreme Court recognized the government's interest in safeguarding the physical and psychological well-being of children and in preventing their sexual exploitation. *Id.* at 756-757. Every video or image of child pornography on the internet constitutes a permanent record of that particular child's sexual abuse. The harm caused by these videos is exacerbated by their circulation. *Id.*

*State v. Duhamel*, 8th Dist. Cuyahoga No. 102346, 2015-Ohio-3145, ¶ 54.

{¶ 28} After providing the foregoing context, the Eighth District noted that Duhamel was in possession of videos "showing eight, nine, and ten-year old girls being vaginally raped by adult men." *Id.* Based upon the contents of these videos, the Eighth District upheld the trial court's imposition of consecutive sentences and found that the record supported the trial court's finding under R.C. 2929.14(C)(4)(b). *Id.* at ¶ 55.

13.

{¶ 29} Later, in its discussion of whether the multiple counts were allied offenses of similar import, the court explained that "[i]ndividuals who view or circulate child pornography harm the child in several ways (1) by perpetuating the abuse initiated by the creator of the material, (2) by invading the child's privacy, and (3) by providing an economic motive for producers of child pornography." *Id.* at ¶ 61, citing *U.S. v. Norris*, 159 F.3d 926 (5th Cir.1998). The court went on to state that "the dissemination of child pornography exacerbates and continues the exploitation and victimization of the individual child." *Id.*, citing *Ferber* at 759; *see also U.S. v. Sherman*, 268 F.3d 539, 545 (7th Cir.2001) (even a "passive consumer who merely receives or possesses the images directly contributes to this continuing victimization."). Similarly, the Twelfth District has previously recognized that "it has been held that possessing child pornography constitutes part of an organized criminal activity that helps to create a market for a product in which children are physically and psychologically abused." *McCartney*, *supra*, 12th Dist. Clinton No. CA2003-09-023, 2004-Ohio-4781, at ¶ 48, citing *State v. Parker*, 8th Dist. Cuyahoga No. 81938, 2003-Ohio-3253, ¶ 45.

{¶ 30} We agree with the manner in which the foregoing authority has enunciated the harm caused by the possession of child pornography. The children depicted in such material are continuously victimized by the online dissemination of images and videos portraying their exploitation and molestation. This is especially true in the age of the internet, when images and videos are nearly impossible to eradicate once they are uploaded and disseminated. Individuals like appellant who download hundreds of videos

14.

and thousands of images containing child pornography from the internet create the demand for creators of such material to produce more and more of it, thereby enlarging the scope and severity of the harm done to exploited children.

{¶ 31} Notably, the record that was before the trial court at sentencing highlights the manner of harm previously articulated by other courts and embraced by us today. Specifically, the investigating officer in this case, detective sergeant Amy Gloor, submitted a letter to the Adult Probation Department explaining that the material retrieved from appellant's laptop computer and thumb drive included hundreds of videos and thousands of images of child pornography involving children aged toddler to 15 years old dating back to 2010. In another letter, Catawba Island Township police chief, John Gangway, explained, in part, that "[t]he content of what Mr. Smith viewed online or downloaded was disturbing and wherever the children were located in the world, they were victimized in part, because of the 'demand' generated by people like Mr. Smith. The nature and gravity of this content should not be minimized." These letters, which were part of the presentence investigation report that was considered by the trial court at sentencing, support the trial court's determination that the harm caused by appellant's possession of child pornography was great or unusual.

{¶ 32} Appellant's portrayal of this case as a run-of-the-mill child pornography possession case minimizes the true severity of the harm caused to those children depicted in the videos and images that were found on his laptop computer and thumb drive.

15.

Contrary to appellant's argument, we find that the trial court's finding of great or unusual harm was supported by the record.

{¶ 33} Accordingly, appellant's first assignment of error is not well-taken.

### B. Maximum Sentences

{¶ 34} In his second assignment of error, appellant argues that the trial court's imposition of maximum sentences was contrary to law. More specifically, appellant contends that his sentence was contrary to law because the trial court's evaluation of the seriousness and recidivism factors under R.C. 2929.12 was not supported by the record and the trial court did not adequately consider the possibility of rehabilitation under R.C. 2929.11 when it imposed the sentence.

{¶ 35} Regarding appellant's R.C. 2929.11 and 2929.12 argument, we note that the Ohio Supreme Court recently held that R.C. 2953.08(G)(2) does not permit an "appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42; *see also State v. Toles*, Slip Opinion No. 2021-Ohio-3531, ¶ 1 (affirming sentencing judgment on the authority of *Jones*). Applying *Jones*, we have consistently held that "assigning error to the trial court's imposition of sentence as contrary to law based solely on its consideration of R.C. 2929.11 and 2929.12 is *no longer grounds for this court to find reversible error*." (Emphasis added.) *State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13; *see also State v.*

16.

*Staten*, 6th Dist. Sandusky Nos. S-20-026, S-20-027, S-21-008, 2021-Ohio-3382, ¶ 13; *State v. Vargyas*, 6th Dist. Wood No. WD-20-068, 2021-Ohio-3383, ¶ 25; *State v. Woodmore*, 6th Dist. Lucas No. L-20-1088, 2021-Ohio-1677, ¶ 17; *State v. Buck*, 6th Dist. Wood No. WD-20-031, 2021-Ohio-1073, ¶ 7; *State v. White*, 6th Dist. Wood No. WD-20-040, 2021-Ohio-987, ¶ 10; *State v. Perz*, 6th Dist. Wood No. WD-20-079, 2021-Ohio-3856, ¶ 19; *State v. Wilson*, 6th Dist. Lucas No. L-21-1037, 2021-Ohio-3768, ¶ 22; *State v. Moore*, 6th Dist. Lucas No. L-21-1033, 2021-Ohio-3995, ¶ 14.

{¶ 36} Moreover, in *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16, the Ohio Supreme Court held that "[b]ecause R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences." Conversely, "R.C. 2929.11 and 2929.12 apply only to *individual* sentences." (Emphasis sic.). *Id.* at ¶ 17. As such, our review of the trial court's order that appellant serve consecutive sentences is limited to his challenge of the trial court's findings under R.C. 2929.14(C)(4), which we already rejected in resolving his first assignment of error. *State v. Adams*, 6th Dist. Wood Nos. WD-21-017, WD-21-018, 2021-Ohio-2862, citing *Gwynne* at ¶ 16-17.

{¶ 37} In light of *Jones*, and consistent with our decisions applying it, we find that we cannot consider appellant's contention that the trial court improperly applied the seriousness and recidivism factors under R.C. 2929.12 or that his individual prison

17.

sentences are inconsistent with the principles and purposes of sentencing under R.C. 2929.11. *Staten* at ¶ 13.

{¶ 38} Accordingly, appellant's second assignment of error is not well-taken.

### III.  Conclusion

{¶ 39} In light of the foregoing, the judgment of the Ottawa County Court of Common Pleas is affirmed.  The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.
                                              JUDGE
Gene A. Zmuda, P.J.

Myron C. Duhart, J.
                                              JUDGE
CONCUR.

                                              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.